HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALASKA VILLAGE ELECTRIC COOPERATIVE, INC., <br><br> Plaintiff, <br><br> v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, et al., <br><br> Defendants. | CASE NO. C11-1375RAJ <br><br> CONSOLIDATED <br><br> ORDER |

## I.  INTRODUCTION

This matter comes before the court on Defendants' motion regarding the testimony of James Bauer.  The court GRANTS the motion (Dkt. # 72) solely to the extent stated in this order.  This order concludes with a set of restrictions with which Plaintiff must comply if it wishes to rely on Mr. Bauer's testimony at trial.

## II.  BACKGROUND & ANALYSIS

The Ninth Circuit has ruled that there is a genuine issue of fact as to the meaning of the insurance policy (the "Policy") at issue in this case.  Sneed Shipbuilding obtained the Policy in accordance with a vessel construction agreement that it entered in June 2010 with Microgen Technologies, Inc., a subsidiary of Plaintiff Alaska Village Electrical Cooperative, Inc. ("AVEC").  The Policy is an American Institute of Marine Underwriters standard shipbuilder's risk policy that omits "Addendum No. 2."  The court

ORDER – 1

discussed the Policy and Addendum No. 2 in its order on the parties' summary judgment motions, and does not repeat that discussion here. For present purposes, it suffices to observe that the meaning of the omission of Addendum No. 2 is critical to AVEC's dispute with the issuers of the Policy over whether it covers repairs to faulty welds discovered during the construction of the two vessels that Sneed built for Microgen. The Ninth Circuit has held that extrinsic evidence, including information about the intent of Microgen, Sneed, and the underwriters from whom they obtained the Policy, creates a genuine issue of material fact underlying the interpretation of the Policy.

A. **Attorney James Bauer Played an Integral Role in Advising the Parties on Obtaining Insurance for Their Shipbuilding Contract.**

Some of the extrinsic evidence that AVEC hopes to rely on at trial comes from its attorney, James Bauer. As the court will discuss, to what extent Mr. Bauer continues to represent AVEC or its allies is not clear. What is clear is that he represented Microgen and its agent, Vitus Marine, LLC, in negotiations with Sneed over a contract for Sneed to build two barges for Microgen. Those negotiations culminated in a June 2010 meeting with Mr. Bauer, Mark Smith (who was representing Vitus and Microgen) and Mitch Jones from Sneed to finalize the construction agreement. The vessel construction agreement, which was based on a standard shipbuilding contract that Mr. Bauer had used for years, required the parties to obtain a standard shipbuilder's risk insurance policy that omitted Addendum No. 2. Mr. Bauer will testify that he told Mr. Smith and Mr. Jones that in order to ensure that the policy they obtained covered faulty workmanship, they must adhere to the construction agreement's requirement for a standard policy that omitted Addendum No. 2. During the same meeting, Mr. Bauer spoke on the telephone with insurance brokers for both Vitus and Sneed, offering the same explanation as to how the parties should obtain an insurance policy that covered the risk of faulty workmanship by deleting Addendum No. 2 from the standard policy.

ORDER – 2

1   After they signed the vessel construction agreement at the end of their meeting
2   with Mr. Bauer, Microgen and Sneed made their own arrangements to find underwriters
3   for the policy that the agreement demanded. Mr. Bauer did not assist them, nor did he
4   know the underwriters they might approach.

Two underwriters later contacted Mr. Bauer to ask him questions about the insurance policy he had envisioned in the Sneed-Microgen vessel construction agreement. According to Mr. Bauer, he gave both underwriters the same overview of the policy that he had given to Mr. Smith and Mr. Jones, including his view on the omission of Addendum No. 2. Mr. Bauer does not recall the name of one of the underwriters or, apparently, the insurer for whom he or she worked. The other underwriter, Linda Windham, worked for National Casualty, one of the insurers who ultimately underwrote the policy. At the time Mr. Bauer spoke to her, he did not know if National Casualty would underwrite the policy.

Mr. Bauer had no further involvement until April 2011, when Mr. Smith called to inform him that an inspector had discovered the faulty welds on the barges, which were still in construction. Repairing the welds would cost more than a million dollars. Mr. Bauer advised Mr. Smith that Sneed should make a claim on the Policy. The underwriters denied the claim, which led to this litigation. In the lead-up to this suit, Mr. Bauer helped negotiate a settlement between Sneed and AVEC.

**B.   AVEC Sues the Underwriters of the Policy After They Deny Coverage for Repairing the Faulty Welds; Mr. Bauer Offers His Testimony.**

AVEC sued each of the five underwriters, including National Casualty, who issued the Policy to Sneed. Mr. Bauer has continued to assist AVEC during the litigation.

Mr. Bauer submitted two declarations on behalf of AVEC in connection with its motion for partial summary judgment. They contained his account of the facts the court outlined in the previous subsection, but they also included many statements about Mr.

ORDER – 3

Bauer's own view of the effect of excluding Addendum 2 from the standard shipbuilder's risk policy. They include this statement:

> I believed and continue to believe the '79 builders risk clauses provide coverage for "faulty workmanship" and "faulty production procedures." And the Marine insurance industry agrees with me. My own experience with marine underwriters and marine brokers, my daily diet, is absolutely to that effect.

Bauer Decl. (Dkt. # 42), ¶ 6. And they include this one:

> My own experience in the marine insurance industry is that marine insurers clearly understand deletion of Addendum No. 2 broadens coverage by deleting the express exclusions . . . for "faulty workmanship" and "faulty production procedures." I have had countless discussions with marine underwriters and brokers over the years and have never had anyone disagree or express doubt on this point.

*Id.* ¶ 13.

The court ultimately denied AVEC's motion, and granted the underwriter's motion, concluding that the policy Sneed obtained did not cover the cost of repairing the defective welds. AVEC appealed, and the Ninth Circuit reversed and remanded, concluding that the extrinsic evidence, viewed in the light most favorable to AVEC, mandated trial.

**C.     After Remand, AVEC Designates Mr. Bauer as an Expert Witness.**

What prompted this motion was AVEC's designation of Mr. Bauer as an expert witness after the Ninth Circuit's remand. On July 1, AVEC designated him as "a witness at trial who may offer expert testimony based upon his expertise in the field of marine insurance, including builder's risk policies, as part of his testimony as a fact witness in this case." Ebel Decl. (Dkt. # 74), Ex. A. Mr. Bauer did not prepare an expert report that complied with Federal Rule of Civil Procedure 26(a)(2)(B). Instead, AVEC attached his two pre-remand declarations to his expert disclosure.

When Defendants deposed Mr. Bauer after remand (but before AVEC designated Mr. Bauer an expert) they asked him questions about whether he or his firm represented any of the Defendants. Mr. Bauer refused to answer the questions, citing attorney-client

ORDER – 4

privilege. He refused also to reveal whether he had represented Ms. Windham as a client. When Defendants asked Mr. Bauer to identify any other underwriters (Defendants or otherwise) with whom he had discussed Addendum No. 2 outside the context of this dispute, he again refused. He also refused to answer questions about whether he continues to represent Microgen or AVEC.

### D. Defendants Move to Exclude Mr. Bauer's Expert Testimony.

Defendants filed this motion, asking the court to compel Mr. Bauer to disclose whether he represented any of them since June 2010 and to disclose the identities of any underwriters with whom he had the discussions he mentioned in his pre-remand declarations. They asked the court to prevent Mr. Bauer from offering expert testimony, either because he had a conflict of interest with all of the Defendants because of his representation of them, because he currently represented AVEC, or because he failed to provide an expert report that complied with Rule 26(a)(2)(B). They also asked the court to prohibit him from offering testimony on the meaning of the Policy or testimony about his conversations with underwriters.

### E. AVEC Retracts Its Designation of Mr. Bauer as an Expert.

AVEC responded to Defendants' motion by backtracking from its designation of Mr. Bauer as an expert. It instead claimed that he was a "fact witness with special knowledge," and later a "fact witness who possesses expertise due to his knowledge and experience." Pltf.'s Opp'n (Dkt. # 80) at 2, 4. AVEC does not explain why it previously designated Mr. Bauer as an expert, but it has now disavowed that designation.

It is apparent to the court that the parties failed to have meaningful discussions about Mr. Bauer's testimony before Defendants filed this motion. The court doubts that this motion was necessary, in large part because it closely resembles the conversation that should have taken place off the record. Defendants understandably questioned Mr. Bauer's designation as an expert, particularly in light of his deposition testimony. AVEC

ORDER – 5

"clarified" their designation by withdrawing it.  In order to ensure that the disputes reflected in the motion do not crop up again, the court orders as follows.

1) Mr. Bauer may offer testimony as a percipient witness to facts that are relevant to this case.  He may describe his June 2010 discussions with Mr. Smith and Mr. Jones, and he may describe the conversation he had with Ms. Windham.  He may also, at least provisionally, testify about his conversation with the underwriter whose identity he does not recall, although the court queries why that conversation is ultimately relevant.

2) Mr. Bauer may not offer testimony about his conversations with underwriters or anyone else about the meaning of Addendum No. 2 or any other aspect of any insurance policy, excepting the conversations related to this case that he has already disclosed.

3) If they wish, Defendants may make limited inquiry of Mr. Bauer at trial about his representation of AVEC, Microgen, or any other person or entity affiliated with AVEC.  In particular, they may ask Mr. Bauer whether he still represents any of those entities and whether he has been paid for providing testimony in this case.  Mr. Bauer may not assert the attorney-client privilege to avoid those inquiries.  IF AVEC wishes to avoid those inquiries, it shall not call Mr. Bauer as a witness.

4) AVEC has offered the following description of Mr. Bauer's testimony:

> [Mr. Bauer's testimony will] consist of his role as the draftsman of the vessel construction contract and its insurance provisions, and his conversations with the parties, their brokers, and individual underwriters who contacted him, as the author of the insurance clauses [in the vessel construction contract] – and not for legal advice – to understand the coverage that Vitus, Microgen and Sneed were seeking to obtain.

The court will hold AVEC to that description.  Mr. Bauer will testify as a percipient witness, subject to the limitations stated above.

ORDER – 6

5) Because he will testify only as a percipient witness, Mr. Bauer may not offer his opinion about the meaning of the Policy at issue. It does not appear that he intends to do so. Pltf.'s Opp'n (Dkt. # 80) at 6 ("[W]ith respect to Defendants' contention that a party may not offer expert testimony on the ultimate legal issue in this case, AVEC agrees."). He will, however, likely testify that he told Mr. Smith, Mr. Jones, and Ms. Windham that it was his opinion that a standard policy that excluded Addendum No. 2 would cover the repair of faulty workmanship during shipbuilding. He may repeat what he said in his conversations, in his role as a percipient witness, but he cannot offer expert testimony because AVEC did not properly disclose him as an expert.

6) The court's disposition today obviates the need for follow-up discovery from Mr. Bauer, mooting that portion of Defendants' motion. The court expresses no view on whether Mr. Bauer's repeated invocation of the attorney-client privilege at his deposition was proper.

### III.  CONCLUSION

The court GRANTS the Defendants' motion challenging Mr. Bauer's testimony (Dkt. # 72) solely to the extent stated in this order.

DATED this 27th day of August, 2014.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 7